Shelby, you can proceed. May it please the Court? Your Honors, there's four reasons why this case needs to be remanded back to the NLRB. And of those four reasons, three of them relate to the employer's conduct in removing bargaining unit employees and their work from the bargaining unit before expiration of the collective bargaining agreement. Those three reasons are the management rights clause contained in the collective bargaining agreement itself, the National Labor Relations Act itself, and then lastly, the union's failure to request bargaining after being given advance notice of the change. Counsel, you referred to the collective bargaining agreement. I've tried to, not actually, somebody on my behalf has tried to find it in the record. Is it in the record somewhere? Yes, sir. It's General Counsel Exhibit 3. Okay. It was part of our record excerpts and also . . . The whole CBA is part of your record excerpts? That particular part of it, the management rights clause . . . Yeah, I'm looking for the whole CBA, the whole collective bargaining agreement. Well, Counsel, you'll have time for rebuttal. You can tell me what you find out. All right. In the management rights clause itself, it specifically provided that the employer retain the right to establish job classifications and discontinue job classifications and to assign and reassign work. The administrative law judge incorrectly held that this clause was ambiguous because it did not define whether or not that language was limited to changes within the unit or external to the unit. That doesn't make it ambiguous. It just makes it broader than they like and that they want in this case. I'm sorry. What is that argument? The administrative law judge found that this clause was ambiguous because it did not specify whether the changes that I described in classifications and work were entry unit or external to the unit. That doesn't make it ambiguous. That just means that it's broader than they like. It's still very clear and unambiguous and that's a de novo issue for this court to determine, interpreting the collective bargaining agreement itself. It doesn't say exclusive or unilateral or can't bargain. No. What it doesn't say that's important is it doesn't say within the unit. They want the act to read into this management rights clause the phrase within the unit and that phrase is not in there. In fact, the management rights clause goes on to consider and specifically reserve the right for the employer to contract out work and that's external to the unit as well. It was specific. You mean a work transfer. Essentially, you're saying they bargained away their right to object to a work transfer? Right. Work transferred out of the unit. Even if that were true, the NLRB here held that this was a modification of scope. This was a union jurisdiction. You unilaterally took the dispatchers out of that unit. Right. And this... The work remained. You've just taken out titled persons from the unit. Well, their argument is both the person... It is both. ...and the work. With regard to the persons, that goes to the establishment and discontinuance of job classifications. You're saying they gave that up also? Correct. Because it doesn't say within the unit in the management rights clause. It says the employer has the right to do that. How do you harmonize the... Is it the D.C. Circuit Regal Sinema's case, which had similar management clause language? The management clause language is not similar. I would say... I would distinguish it along the language of the management clause itself and I would also distinguish it along the lines of... We have another hurdle and the other reason is the act itself and the act itself deals with supervisor status and that's a fundamental determination about whether an employer has violated the act or not. That should be the first thing that the NLRB looks to to decide whether we're talking about supervisors or not. And they absolutely refuse... Most of your brief approach is that issue. Correct. But that's an issue that the board didn't reach. Correct. The board never reads that issue so our argument is that that determination, this case needs to be remanded back to the board to specifically consider supervisor status. If this court... Section 8 violation is your unilateral changing of the scope of the unit. That's a threshold violation whether or not you could have agreed to put a supervisor into a unit. You could have negotiated that way. We could have agreed to put a supervisor in the unit. If both parties to a collective bargaining agreement say we're going to put a supervisor in it, then you're as bound by that agreement whether or not Gulf states were still the law and these weren't and these are managerial folks. And that is board law and that... The board by taking that position expands in essence the jurisdiction of the act because in section 2 of the act is where Congress specifically exempted supervisors from the definition of employees. It went one step further in section 214. It said that the employer cannot be compelled to bargain about supervisors. These positions have been included in the definition of the act and bargaining agreements between these parties for 40 years. These positions have evolved. We address that... Twice you challenged and backed off, right? No, twice we mentioned it. There was no challenge. It was just mentioned for discussion and in both times consistent with this time, the board didn't say... The union didn't say let's bargain about that. The union says we're going to have to file an unfair labor practice charge. And they did that in this case, but they did it way late. They did it after the agreement where the change occurred had expired. They waited until after that agreement expired, they waited until a new agreement was entered into. Where does the current agreement put these people? The current one? Outside of the unit. The latest negotiated CBA? The latest and that's not in the record anywhere. We're past even the subsequent one. Gulf states which you rely on so heavily. I understand that this court's prior ruling on the Energy Mississippi case. Which you did in 28J or you did? I did not. I'm aware of the... I'm saying I'm aware of the court's decision here recently in the Energy Mississippi case. And to address that I would say again, supervisor status is a fundamental determination. In this case, it's different from the Energy case in that the court, the board, excuse me, never reached that decision. You'd say the record shows these have disciplinary authority, these have discretion even under the higher standard. It does. Even under the higher standard applicable and even under the specific issue that this court remanded the Energy Mississippi case and that's to respond, to assign employees to work locations, is that done with independent judgment? And we have very similar evidence in the record as to the duties of these. As this case comes to us, it's my view that that issue isn't there. Because we're dealing with these earlier questions of whether you agreed that they were in that unit and then you took them out and it was a fait accompli. I know you probably want to turn to that issue. I do and I don't think it was a fait accompli. Okay. Fait accompli, the cases, there's a vast number of cases. Most of those cases are determined on the basis that the notice was announced the same day the action took place or very shortly thereafter. The other cases where fait accompli was found, when there was a notice, the union did something affirmative like file a grievance, which they had the opportunity to do here and did not, before the change was implemented. In this case, notice was given to the employees and to the union. It was in the same proximity of time within a week and the record reflects that that was due to testimony, but the employer in this case made every effort to give notice to everyone several weeks before the change on December 1. The change occurred, they had a meeting with the union representative for this specific purpose. The testimony differed in that regard between the employer and the union representative. It was not inconsistent, but it differed. What about the fact, as I read it, the ALJ made a specific credibility finding saying, I believe Porceau, I don't believe Ranek. We would review that finding for clear error. Correct. I don't believe he said, I don't, he said they were not inconsistent. I thought he said, I credit Porceau, that this was delivered as a resolute end of story. He did say that. He said he believed Porceau that it was delivered as a done deal. That's subjective testimony. But it was credited by the fact finder. The board decisions on that issue indicate that a subjective conclusion by witness is not determinative of that issue. So what they ignored. Because I would have thought we would only review that which could be decisive as to fait accompli. Union rep says, we were told it and said, see you later, there's no room. They wouldn't grieve, they wouldn't bargain. And if the ALJ says, I heard that and I credit it, why isn't that the end of the story? What's the best case that says that that's just subjective and we don't give that deference? I'll have to look that up and I'll give that to you on rebellion. But that is addressed in our brief that it's simply a subjective finding. Okay. When, going back to that conversation, that conversation that they set, what they said there is where the testimony differs is the union says we're going to file a complaint. But they did not. Until after the agreement expired and several months, at least a month into the new agreement. They did not file a grievance, they did not write a letter, they just, their testimony was we're going to have to file a board charge. That is not tantamount to requesting bargaining. That's threatening something that they didn't end up doing until later. The testimony was absolutely clear that the employer never refused to bargain. And in fact, once the agreement did expire, it was in the employer's proposal again to the union, and that goes to the issue of the timeliness of our unit clarification petition. So after these folks were removed from the unit, contract expires, come to bargaining again in February of 2011, that was specifically in the employer's proposal, general counsel exhibit 18, striking the systems operators from the unit. Instead of bargaining over that issue, the union proposed a reservation of rights letter, which was executed. But again, the employer tried to bargain over that, and it's the employer's position that we're talking about supervisory status employees here that we can't be compelled to bargain over, but they offered to bargain over that in that proposal, and it did not come to fruition. They did not want to bargain over that. So we ultimately filed a unit clarification petition. The unit clarification petition, yes, it was outside of the normal time frame of unit clarification petition, but it was in direct response to the unfair labor charge, because at this point, considering the management rights clause, considering their failure to request bargaining at the time of the change, considering their refusal to bargain over this issue at the new negotiations, they then in March file an unfair labor practice complaint. In normal procedure, we presented our evidence to the board through the investigator, and so at that point, we still don't know if it's going to ultimately result in a complaint or not. So then it does, in fact, result in a complaint, and at that point, in response to the complaint, we filed a unit clarification petition. Well, the justification for not considering the unit clarification petition at that point is it's too late, it would disrupt the bargaining process. Well, obviously, it did not disrupt the bargaining process, because back in February, they got a deal on every single other issue that was bargained over, except the one that the union refused to bargain over, and that was the removal of the supervisors from the bargaining unit. Counsel, if you're successful in this review, what benefit is it to Dixie Electric at this stage? You have a new contract, the supervisors are supervisors again, if I understood what you were saying earlier outside the record. Now, I understand generally NLRB wanting to do this for future use. What benefit is it to you if you are successful? Well, to your company. The way it stands right now, we have an, the enforcement action is to require us to put them back in the unit. Would that just apply to the previous contract? They want us to put them back in the unit retroactively to the time of when they were removed from the previous contract, and leave them in there all the way until now. It would be the board's position that we, they're still in the unit. If you rule on their enforcement action and grant that, then they would be back in the unit. Or under your current contract? One that's in operation as we, you stand here? In essence, yes. They would say we have to put them back in the unit in the current contract, and then negotiate over what their salary would be, what their wages would be in that period. We filed a unit clarification petition, again, to try to get the very issue of supervisor status in front of the board. They are going to great lengths to avoid the issue of supervisor status. Granted, it's a very Let me pick you up on that. You say they would go to great lengths to focus on the supervisor status. The board did not set a seeming argument, though, that they are supervisors. You and employers just are not allowed to unilaterally alter the bargaining unit. You never, as I read it, challenged that point. You are your supervisor. You're going back to each other like that. We do address that point, Your Honor. We unilaterally move them, and we had a right to do that because of the Management Rights Clause, number one. Number two, in the Act itself, Section 214, we can't be compelled to . . . By allowing the board to say that if you have a supervisor in the unit, and you can't take it out, that frustrates Article II, Section 214. It doesn't matter whether you're supervisors or not. They don't reach that point. You just simply can't unilaterally alter the bargaining unit, and that period. So that sounds like . . . And I never hear . . . You've said in most of your briefs, talking about whether they're supervisors, not supervisors, et cetera, et cetera, and they said that's not what they ruled on. And the engagement point here is the basis of their ruling, which is that you simply can't unilaterally do this, and that what you did was a unilateral alteration of the bargaining unit. And the only closest thing to an answer I'm hearing is that your CBA's Management Clause in some . . . provides protection to you. That's one thing, and the other thing I'm saying, they had to rule on that, and they didn't, and that's why it should be remanded to them to rule. If this Court finds that the Management Rights Clause authorized us to do this, there's no further inquiry. If this Court doesn't believe that the Management Rights Clause authorized us to do that, then the next step is, are these supervisors under the Act? What's the precise language, again, in your Management Clause? It says, some rights retained by the company include, but are not limited to, and then I'll skip over, the right to establish job classifications, comma, and discontinue job classifications, comma, to assign and reassign the work to be performed by employees or classifications of employees, as the company may deem necessary. That's pretty direct and pretty expressed, and their argument that that . . . the Board's argument and the ALJ's finding that that's ambiguous because it doesn't clarify whether we're talking about within the unit or external to the unit, it's just broad. It's still clear and unambiguous, it's just broader than they like. All right, Counsel. Thank you. Good morning, Your Honors. May it please the Court, Michael Hickson on behalf of the National Labor Relations Board. Prior to December 2010, DEMCO's Chief System Operator and System Operator employee classifications were included in the bargaining unit represented by the union for a matter of decades. And in December 2010, there was, in fact, a written collective bargaining agreement, in effect, that expressly included the operators in the unit. DEMCO then plainly violated the Act when, at that time, it unilaterally removed those employee classifications from the unit during the term of the contract. Substantial evidence in the record supports the Board's finding, first . . . Even if it were unequivocally that they were supervisors under existing law? That's correct, Your Honor, because the company agreed to include them in the unit . . . Which . . . is there any Fifth Circuit authority for that? If the parties agree to put a supervisor manager into a unit, then they're bound by it. Is that just an obvious proposition? Your Honor, I'm not aware of any Fifth Circuit precedent that speaks to that point. There is . . . It's well established as a matter of Board law, the Fourth Circuit and Ninth Circuit have also upheld the Board's position in that regard. Those are in your brief, those cases? No, Your Honor. The Fourth Circuit and Ninth Circuit cases were not included in our brief. We didn't include them because the company, as I think . . . That's all right. Maybe just give me the Fourth Circuit site. The Fourth Circuit site is Industrial Turnaround Corporation. The site, Your Honor, would be 115 F. 3rd, 248 Fourth Circuit, 1997. I guess just to expand on that, maybe since we're talking about it, the company has cited to Section 14A of the Act, which says that an employer may not be compelled to treat statutory supervisors as employees for the purpose of any law relating to collective bargaining. Well, no one has compelled Demco to do anything. The company has voluntarily agreed to include these people in the unit for decades and expressly did so with respect to the 2007 to 2011 collective bargaining agreement. Let me clarify what we mean by including within the unit or not. You had here these two positions, the Chief Systems Operator and the Systems Operator, the Operators. They are, prior to the action of the employer here, were these people, they were supervisors or not supervisors? Well, Your Honor, it's never been determined by the Board whether they were . . . No, no. Just stay with me. What were they? Well, Your Honor, they were included in the bargaining unit. That is . . . I understand. No, just stay with me, please. Yes, sir. What I want to understand is what we mean when we're talking about moving them out of the unit. If you have . . . if the company says, we have systems operators here and we decided that we're going to make them supervisors, does that move them out of the unit? Sir, what happened . . . Now, did that move them out of the unit? Well, sir, yes, what happened . . . they did move them out of the unit because they . . . Do you understand my question? Maybe I'm not, Your Honor, and I apologize. I'm trying to . . . I understand. That's probably my difficulty that I'm having is that you have two employees and they have a particular job function and the management says, we're going to make them supervisors. Now, that being a supervisor has consequences in terms of their compensation, et cetera, et cetera. Is that making them supervisors a removal from the unit? Okay. I think I understand your question now, Your Honor. If I could . . . I'm sorry? I think I understand your question, Your Honor. Not necessarily, but what the company did here was not just say . . . All right. In other words, they would not . . . if they just simply made them supervisors, which meant they would be salaried and they're not a wage . . . they're not an hourly worker at that point. They continue to do exactly the same function. If that's all they did, then you would not have removed them from the unit unilaterally, correct? Not necessarily, Your Honor. Well, I mean, what I'm saying is if all they do is say, these two people continue to do the same thing, but we're going to make salaried workers out of them. Well, if they make salaried workers out of them, they would be rendering the collective bargaining agreement inoperative with respect to those employees because the workers who are covered by the collective bargaining agreement who are recognized by the company as being represented by the union are not salaried. Isn't your answer that they can never do it unilaterally? That it could be mandatory or permissive bargaining, but they couldn't do it unilaterally under the law? That's correct, Your Honor. Once a specific classification has been included in a bargaining unit, as was the case here, that position cannot be removed from the unit unless the employer obtains the consent, the consent, not just bargains in good faith, obtains the consent. If it were removed from the unit, I understand that you would be removing from the unit if you did nothing but simply change. The work goes on as usual, except now henceforth, these guys are supervisors and would appear . . . Your Honor, what I mean by removed from the unit is cease to recognize the union as their collective bargaining representative and cease to apply the terms . . . The answer is that would remove them from the unit? Yes, Your Honor. All right. Sorry. I'm sorry for the confusion, Your Honor. I apologize. Yes. All right. Let's go back to ground zero. Back at ground zero, you probably have to deal with the Management Rights Clause because if we are putting aside the uncertainty Gulf states to enter G and whether this record shows these people are or aren't supervisors and the outside of the record current, put all that aside. Your position is you've got a Section 8 violation simply because of the unilateral removal. I think their answer is, no, you don't. You bargain that away with the Management Rights Clause. Well, yes, Your Honor, but to begin, the Management Rights Clause simply does not apply when it comes to the Board's initial finding that the company unlawfully modified the scope of the unit. The Management Rights Clause is only relevant to the Board's alternative finding that even if the company did not modify the unit's scope, it unlawfully removed work from the unit. So that — you're familiar with all this case law, Easterbrook's dissent in Hill-Rom? I'm familiar with Hill-Rom, yes, Your Honor. Because he points out that's a hard — for people that don't do NLRA law all the time, the distinction between a work transfer bargainable and a jurisdictional scope question, they're flips of the same coin. Well — No? Yes. I know what you're talking about, Your Honor. It certainly can be a hard distinction to make, but it's not at all a hard distinction in this case, and I will tell you why. To begin, the bargaining unit, it is defined by the listing of specific classifications. The operator classifications that are at issue were specifically expressly listed as included in the unit forever and at the time that the company took the unilateral action here. Additionally, the company clearly, undisputedly removed all of those classifications from the unit during the term of the agreement. All of the positions were eliminated. So why doesn't the Management Rights Clause that says they can discontinue a classification cover that step? Well, again, first, Your Honor, with respect to the unit scope, management rights does not apply. The standard there is not one of waiver. The standard there is one of consent. And I would point out that when the parties signed their February 7, 2011 Reservation of Rights letter, they, the company agreed that the union had not agreed at any time to relinquish representation of the operators. So management rights is a waiver issue, not a consent issue. It does not apply to the Board's primary finding that the unit scope was modified. The Management Rights Clause was in the CBA at the time that they reclassified these employees, correct? Yes, Your Honor. Not when they went to the new contract and preserved their rights. Is that correct? I don't know, I don't follow what you mean by waiver. The question that the counsel officer, the argument that the counsel officer is making is that they had the right under the Management Rights Clause to do exactly what they did. And my question to you is what is, why is, what's the flaw in that argument? Okay, Your Honor, I will answer that question when it comes to the Board's finding as to the unilateral. You didn't answer my question. Yes. What is that? Well there are two flaws, I guess. The first flaw is that it's simply the Management Rights language, as a legal matter, it is What is the language of the clause that does not do this? Well the only language that the company relies on in its brief is that it authorizes the At oral argument, the company also pointed to later language in the clause that talks about assigning and reassigning work. However, they've waived that issue by not addressing it in their brief. They solely rely on established job classifications and discontinued job classifications. What's your case that stands for your first response, which is as a matter of law it isn't something that can be waived? What's your best authority? Your Honor, it would be all of the cases that we cited in our brief in the Applicable Principles section having to do with unit scope, that it is a matter of consent. It requires consent, which is But has any addressed the issue where inadvertently it was surrendered? I'm not aware of a case of that. So let's assume you're right or you're wrong. Move to your second argument. Just focusing on the language of this, why is it wrong? I think you were trying to get to that point. Yes, Your Honor. So there are a few reasons. The first is that the standard, which this waiver, by language in a collective bargaining agreement concerning statutory rights, the standard is one of clear and unmistakable waiver. The language that the company points to does not constitute a clear and unmistakable waiver of the union's statutory right to bargain over the transfer of work outside of the unit. And I think that the Regal Sinema's case by the D.C. Circuit was mentioned before. I think that is a very relevant case and it's helpful in this regard. The language there, granted, I think there was, I may be off by a word or two, but it was, it authorized the company there to eliminate, to change or eliminate existing procedures or work. So to change or eliminate work. The D.C. Circuit found that that language did not constitute a clear and unmistakable waiver, authorizing the company unilaterally to move work that had been performed by unit employees to non-unit managers. So I think that's an illustrative case. I would also point out that, as a matter of fact, the company did not discontinue these jobs. It did not. The same employees continued working under the same title, in the same control room, doing essentially the exact same work. So the jobs were not discontinued. They were simply moved out of the unit. It's the same people doing the same jobs. If they thought they had that authority under the Management Rights Clause, would it be logical they would have used that same authority the two earlier times when? That's a good point, Your Honor. Yes. I mean, the two earlier times, as you mentioned, it's in the record. It was brought up that the company was interested in taking these folks out of the unit. The union protested. The company backed off. That's right. The company's reading of this language, it should be pointed out, and the D.C. Circuit actually found the same in the Regal Sinema's case. The company's reading, it would have the union waiving its statutory right, allowing the company to eviscerate the unit, to destroy the unit, by at will designating that any given or all unit positions have been discontinued by simply designating them as managerial. Having the same people doing the same job, just saying now they're out of the unit. If you win, we had this dialogue with opposing counsel at the end, what would be the relief scope if the current CBA puts them as supervisors? I don't, well, Your Honor, I can't, I don't have any knowledge as to the current CBA. I don't know if it was really highlighted before that, again, the 2007, excuse me, the February 7th, 2011 Reservations of Right language, that was signed when they negotiated the 2011, 2015 CBA. That says, you know, the parties agree that the union has never relinquished. So I don't know what happened in any negotiations that might have happened after the record closed. But, you know, the board's order requires that they rescind their unlawful action, that they put the people back in the unit, that they recognize the union as the representative, that they make them whole if they, you know, if they suffered any losses as a result of the company's unfair labor practices. The question for us is whether to enforce the board's award, but you don't know the answer to what that means? I think, well, Your Honor, I just tried to explain what it means. Perhaps I wasn't clear, but I was trying to explain what it means. What it means is that they, as the board states in its order, that they rescind their unlawful action, their unilateral action of removing these people and their work from the unit, that they put them back in the unit, they recognize the union as their statutory bargaining representative, they apply the terms of the contract to those people, they make them whole for any losses that they suffered as a result of the company's unfair labor practices, among other relief that's expressed in the board's order. Okay. On the fait accompli discussion, your position is there is a fait accompli because the language is declaratory, there is a fait accompli because it was announced to the employees before the union, it was too proximate to the change, or all of the above? Almost all of the above, Your Honor. The reasons that the board relied upon, and there are several, the first is that the company's witness, Mr. May, Vice President May, admitted that the company made its decision in August, August of 2010, that's several months before they ever notified the union of the change. That's the first reason. The second reason is they notified the affected employees a full week before they notified the union. That's crucial and an additional reason supporting the fait accompli finding. The additional reason is that the company communicated its decision as a resolute matter, that this was final, that they were doing this, and that it did not matter. In fact, and that's both in the oral statements that the company made in their meetings with the employees and in their meetings with the union rep, and also in their letters, and in fact, during the meeting that Mr. Vranek had with Porceau, the union rep, when he told them that the company was going to do this, when Mr. Porceau protested by saying, well, we're going to have to file labor board charges, he was resolute. His response was, you do what you got to do. I did what I had to do. This is the direction we're going in. That was Porceau's testimony. So they were resolute. And all of those circumstances together provide more than substantial evidence for the board's fait accompli finding. What's the best circuit case on fait accompli findings that you would direct us to? In circuit, Your Honor, there are several cited in our brief. I believe one is seaport advertisements and there's another. And in that Gulf States, I think, although it might have been a different Gulf States than the other Gulf States case we were talking about, those cases point out that they make clear that the company's obligation, the employer's obligation is not only to provide timely notice, not only to provide notice prior to implementation, but to provide meaningful notice, notice which at least affords the union a reasonable opportunity for counter proposals. And when objectively, the circumstances as a whole convey that any request for bargaining would be futile, then the union is relieved of any obligation to request bargaining. Your Honor, I'm not sure where to turn next. I guess I would say, I already addressed that. The company said, I'd like to address a couple points I could if the company made. They said that the employer tried to bargain in 2011 and that the union refused to bargain in 2011. I find that comment rather remarkable considering that the company had already violated the act by unilaterally taking these people out of the bargaining unit in December of 2010. So it makes no sense to say that the company tried in good faith to bargain with the union in 2011. They had already unlawfully taken the people out of the unit. If the Management Rights Clause allowed them to make this change, would that be so? I'm sorry, Your Honor, I didn't catch. I just wondered if the issue is anything other than whether or not the Management Rights Clause here unambiguously granted them the right to do what they did, period. No, Your Honor. The case does not come down to that because, again, the board's position is, and the company has presented no argument, no case law to refute this position, that the management rights language is irrelevant to the modification of unit scope. The management rights language, as a legal matter, is relevant to the board's alternative finding that even if the scope was not modified, the company unlawfully took work out of the unit. Your threshold position is that the Management Rights Clause did not, because it could not, give the right to alter the bargaining unit. Well, as a threshold matter, the Management Rights Clause is not relevant as a matter of law when it comes to the board's initial finding that the scope was unlawfully modified. I guess I can't, Your Honors, I just, again, would emphasize that the facts here are remarkably strong in the board's favor. The board's finding is supported by more than substantial evidence. These classifications, for a matter of 40 years, as has been, I believe, admitted by my opponent, were included in the unit. At the time of the company's action, the classifications, the individuals involved, the operators, they were expressly included in the bargaining unit by the terms of the agreement, which was still in effect. It's undisputed that the company took these folks out of the unit while that agreement was still effective. All of the positions were eliminated. All of these employees were moved wholesale, overnight, into new non-unit positions. And in those positions, the same people kept working under the same job title, doing the same work, out of the same control room. It's also not disputed that neither the union nor the board ever consented to that action. All right, Counsel. Thank you. Your Honor, briefly, Your Honors, I would like to pick up where opposing counsel left off, where he said, overnight, they were transferred. That's not the case that, in this case, on November, prior to November 17, the date of the letters advising both the employees and the union of the notice, there were meetings with the employees. On November 18, there was a meeting with the union. This is prior to the December 1 date that was stated in the letters. What's the relevance of that? Yes, sir. Implicit in what you're saying is that you had an obligation to bargain with it, and you did. That you met with them, or whatever, or at least an obligation of notice of some kind. That's absolutely correct. And then the burden would then shift to the union to request bargaining. We told them what we wanted to do and why we wanted to do it on the 18th. The Fifth Circuit case that opposing counsel cites for the proposition of fait accompli . . . The argument you're making now is that there was a duty to bargain with them, but you gave them the opportunity and they waived it. Is that correct? Partially correct. I'm saying if there was a duty to bargain with them, we satisfied that. I'm not saying there was a duty to bargain with them. You're still maintaining your threshold argument that you didn't have . . . you had no duty to bargain. Correct. That's the distinction. But if we did, we satisfied that duty, then the union had to take some affirmative step after November 18. They could have . . . again, they could have filed a grievance. They could have gone on and filed their unfair labor practice charge that they threatened, or they could have simply requested bargaining. They never requested bargaining. The employer never refused to bargain. Going back to the fait accompli case that talks about subjective impressions, that's the McGraw-Hill case cited in our brief, that affirmative statements about what we want to do and a subjective impression on the part of the recipient of that are not evidence of fait accompli. That case, when I look it up, will be that we're reversing an ALJ's finding that relied on the statement by a union rep that I thought it was resolute and we couldn't meaningfully negotiate? Correct. The record, the section of the record, it was mentioned that the decision was made in August that Ron May, one of the management employees that testified about the change that was made in August, his response in the record was, yes, but there were discussions that took place. And the ALJ actually recognized that on page 63 of the letter. He said, now you said you had discussions internally in August of 2010. Those are discussions in August of 2010. He found that the decision was made in August of 2010. It really doesn't matter when internally the company decided or not decided that they wanted to pursue this course. There's also evidence in the record that, and then in October, they're still putting together the job descriptions for these management employees. What happened was, in November is when it was communicated, and in advance, the records show that in advance of that meeting that Floyd Poore showed the union representative, he was aware of what that November 18 meeting was going to be about. The union steward had already told them because there had been discussions with the employees. There is a waiver case where no notice was given to the union at all. The union was, in essence, imputed with notice because of notice to the employees. In this case, DEMCO went above and beyond to make sure the issue was put in front of them, put in front of them in an opportunity to where if the union wanted to request bargaining, they could. What about his point that your interpretation of your management's rights provision would allow you to discontinue the whole unit? Well, we could do it under another clause in that management right, because if we reserve the right to contract out work... So you're agreeing that they surrendered their right to have the integrity of any unit? I'm saying that that was not done in this case, and that's not the facts of this case. We did not eviscerate the unit. We removed folks that we believed to be supervisors. But your interpretation of the clause is that it's clear and unambiguous that you could... not eviscerate the unit, that we could... exactly what it says. We could change job classifications, and we can assign and reassign work. And further, it says we can contract out any work that we want to. And so we could, in essence, have contracted out all work that the unit's providing, and then, in essence, become a shell and do nothing but contract out the work. But they didn't. They didn't do that, Your Honor. That's not the facts of this case. A lawyer could have walked away from the union simply by moving everything out of the unit. They could, and they did not. But your legal position is that they could do that. That's a rather extraordinary position. If they're reading the Management Rights Clause with an overlay of the National Labor Relations Act, then we're still within that framework in the Management Rights Clause because the folks that we moved were supervisors. And that's why the determination of supervisor status was important. Opposing counsel mentioned that nothing will compel us to bargain over that. And that's right. That's what Section 14 says. But it also goes further, and it says no law. 14A says, shall we compel the deemed individuals to find supervisors as employees for the purpose of any law? Well, Section 8D is a law. It's in the Act itself. And that's a law that you cannot compel us to bargain. So my argument is, is when there are supervisors, that we don't have a mandatory bargaining under 8D. All right, Counsel, unless my colleagues have another question. Thank you very much. We'll take a brief recess before the next argument.